IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>**MICHAEL RAY FRIDAY,**<br><br>Debtor. | Case No. 24-12364-JDL<br>**(Chapter 7)** |
| **FUSION INDUSTRIES, LLC AND K&M HIGHLINE SERVICES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL RAY FRIDAY,**<br><br>Defendant/Debtor. | Adversary No. _____ |

### COMPLAINT REQUESTING AN EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. §523

Fusion Industries, LLC ("Fusion") and K&M Highline Services, LLC ("KM") (collectively "Plaintiff"), creditors of the Debtor in this Chapter 7 proceeding, pursuant to 11 U.S.C. § 1328(c)(2), present this Complaint against Michael Ray Friday ("Debtor") to except the debt owed by Debtor to Plaintiffs from Debtor's bankruptcy discharge and, in support hereof, state as follows:

### PARTIES

1. Plaintiff Fusion is an Oklahoma limited liability company doing business in Oklahoma County, Oklahoma.

2. Plaintiff KM is an Oklahoma limited liability company doing business in Oklahoma County, Oklahoma.

3. Defendant Michael Ray Friday is the Debtor herein with an address of 11075 E. Prairie Grove Road, Guthrie, OK 73044 as listed on his bankruptcy schedules.

## JURISDICTION AND VENUE

4. This adversary proceeding is brought under Fed. R. Bankr. P. 7001.

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(J).

7. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are found in 11 U.S.C. § 1328(c)(2) as well as 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), and (a)(19)(A)(ii), as well as Rules 4002, 4004, 4005, 4006, 4007, and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9. In accordance with Rule 7008 of the Bankruptcy Rules, Plaintiffs state that a final Judgment has already been entered against the Debtor. Further, amended claims joining Debtor's spouse (putative ex-spouse, entities owned and controlled by Debtor, and a putative third-party transferee) without consideration of substantial assets of Debtor within a short time prior to the Petition has been allowed in the underlying state court litigation that established the Judgment against Debtor, progress of which has been halted by the Debtor's filing of his *second* Petition seeking bankruptcy. As such, Plaintiffs do not consent to final judgment of the Bankruptcy Court upon the substantive claims against

Debtor and others, but do consent to entry of a final adjudication that Plaintiffs' claims against Debtor are not dischargeable claims.

## BACKGROUND

10. Plaintiffs are creditors of the Debtor and parties in interest in his Chapter 7 Bankruptcy Proceedings.

11. On or about February 24, 2016, Fusion and Debtor entered into a Membership Interest Purchase Agreement ("Purchase Agreement") whereby Fusion paid Debtor $4,350,000 for all of the issued and outstanding ownership units in KM.

12. The Purchase Agreement contains covenants by Debtor in favor of Fusion and KM, such as confidentiality, non-solicitation, non-competition and non-disparagement, among others.

13. Specifically, as part of the Purchase Agreement, Debtor agreed as follows:

> **SECTION 7**
> **NON-COMPETITION AND NON-SOLICITATION**
>
> 7.1  Non-Competition. During the term of Seller's employment with the Company and for a period of five (5) years thereafter, Seller shall not, directly or indirectly (through a member or members of his immediate family or otherwise), individually or in partnership or conjunction with any other person or entity:
>
> (a)  be engaged or participate in the Business or any business or services related thereto, in any manner, within the counties where the Business of the Company was being conducted as of the date of termination of Seller's employment with the Company, or any counties contiguous thereto; or
>
> (b)  own, operate, acquire, develop, manage, or take any action that results or may reasonably be expected to result in owning, operating, acquiring, developing, or managing any business which conducts the Business or any business or services related thereto, in whole or in part.

14. Also, as part of the transaction, Debtor became a post-transfer employee of KM pursuant to a written Employment Agreement ("Employment Agreement").

15. The Employment Agreement contains covenants of Friday in favor of KM, such as loyalty, non-solicitation, non-competition and non-disparagement.

16. Specifically, as part of Debtor's Employment Agreement, Debtor agreed as follows:

> 1.2 During the Employment term, Employee shall devote substantially all of his business time (excluding periods of vacation and other approved leaves) to the performance of his duties with the Company; provided the foregoing shall not prevent Employee from (i) participating in charitable, civic, educational, professional, community, industry, or other affairs or, with prior written approval of the Principal (such approval not to be unreasonably withheld); and (ii) managing his and his family's personal investments so long as such activities do not materially interfere with the performance of his duties hereunder or create a potential business conflict or the appearance thereof as determined by the Company.

> 6.1 Confidentiality
>
> a) Employee shall not, directly or indirectly, use or disclose any of the Company's confidential proprietary business information known or gained by Employee as a consequence of his association and employment with the Company, which is not generally known in the industry including, but not limited to, information about the Company's customers, clients, vendors, pricing, processes, products, services, business practices, testing, industry know-how, and computer facilities and programs.

> 6.2 Non-solicitation. During the term of Employee's employment with the Company and for a period of five (5) years thereafter, and the purchase agreement is fulfilled, Employee shall not, directly or indirectly, individually or in partnership or conjunction with any other person or entity:
>
> a) contact, solicit, induce, attempt to induce, or make request of any person or entity engaged in any capacity with the Company whether as an established customer, client, contractor, business contact, or employee, for the purpose or with the effect of that person or entity terminating his, her or its engagement, relationship or employment with the Company; or
>
> b) contact, solicit, induce, attempt to induce, or request any established customer, client, contractor, business contact or employee of the Company to transfer such person or entity's business or relationship with the Company to any other person, firm, partnership, corporation, or other entity.

> 6.3  **Non-competition.**
>
> During the term of this Agreement, and for a period of five (5) years following the termination of this Agreement for any reason, Employee shall not, directly or indirectly (through a member or spouse), individually or in partnership or conjunction with any other person or entity:
>
> a) be engaged or participate in the Business or any business or services related thereto, in any manner, within the counties where the Business of the Company was being conducted as of the date of termination of Employee's employment with the Company, or any counties contiguous thereto; or
>
> b) own, operate, acquire, develop, manage, or take any action that results or may reasonably be expected to result in owning, operating, acquiring, developing, or managing any business which conducts the Business or any business or services related thereto, in whole or in part.

17. After Fusion purchased KM, it was discovered that Debtor owned a company named Black Out Power, LLC ("BOP"), a direct competitor of Fusion, and had used BOP to subvert, undermine and directly compete with the business of KM and Fusion.

18. After Fusion purchased KM, it was also discovered that Debtor owned an interest in Premiere Powerline Construction, LLC ("PPC") which was also a direct competitor of Fusion and KM.

19. Debtor purposefully and actively concealed his ownership interests in BOP and PPC, and the clandestine acts of those entities, from those managing the business of Fusion and KM.

20. Debtor's involvement with BOP and PPC constituted direct violations of his promises within the Purchase Agreement and the Employment Agreement.

21. Debtor knowingly and intentionally induced Fusion to enter into the Purchase Agreement and Employment Agreement to perpetrate his fraudulent scheme by

gaining insight as to the trade secrets and other protected information of Fusion and KM, and to use the same for his personal and competing interest.

22. Debtor fraudulently misrepresented to Fusion that he would not act in such a way to harm the business or other interests of Fusion or KM.

23. When Debtor represented to Fusion that he would not disclose proprietary information of, or compete against Fusion and KM, Debtor knew his representations and statements to be false, and those representations were made by him with an intent to defraud and deceive Fusion and KM, and those who manage their business.

24. Fusion and KM filed an action in *Fusion Industries, LLC, et al. v. Michael Friday, et al.*, Oklahoma County District Court Case No. CJ-2019-657, in pursuit of their claims against Debtor.

25. During the pendency of the above-identified state court litigation, Debtor putatively sold his interest in BOP for an amount to be paid to him over an extended period of time.

26. On information and belief, Debtor did not fully disclose the consideration he received from BOP or its other stakeholder for putatively divesting his interest therein.

27. Debtor and his now ex-wife, Terri Friday, filed a Dissolution of Marriage action in the Oklahoma County District Court on January 27, 2022. The Decree of Dissolution of Marriage awarded a large portion of the marital assets to Terri Friday while ordering Debtor to assume the majority of marital debt. Plaintiffs aver that this constitutes a sham divorce and fraudulent transfers intended to prevent creditors, including Plaintiffs in particular, from recovering damages caused by Debtor and Debtor's entities.

28.     Judgment was entered against Debtor in the above-identified state court litigation in the principal amount of $58,980,460.20, plus interest.

29.     Post-Judgment collection efforts in the District Court matter were ongoing until the Bankruptcy was filed and the automatic stay was instituted. This included the Court in the state court action allowing amended pleadings to pursue Fusion's fraudulent transfer and alter ego claims by which assets wrongfully or fraudulently transferred by Debtor could be recovered or made subject to the Judgment.

30.     The debt to Fusion and KM should not be discharged because, as conclusively determined by the Court issuing the Judgment, Debtor fraudulently induced Fusion and KM to enter into the Purchase Agreement and Employment Agreement by false pretenses, a false representation, or actual fraud, with malice. As such, Plaintiffs' claims against Debtor are not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

31.     Specifically, Debtor fraudulently induced Fusion into purchasing KM, to wit: a) Debtor's material representations that he would not engage in competition, directly or indirectly, with Plaintiffs, while materially concealing the fact that he had already formed an entity with the specific intention of using his continuing managerial role at KM to divert business away from KM to PPC and BOP and to solicit business in direct competition with Plaintiffs; b) Debtor's representations were false and the undisclosed facts were material to the transaction between Plaintiffs and Debtor; c) Debtor knew or recklessly disregarded that his representations were false and knew or recklessly disregarded that creating a competing business would be material fact that, if known, would have caused Plaintiffs to not enter into the subject contracts; d) Debtor made the misrepresentations and omitted

disclosure of the material facts with the intention that Fusion act upon false and misleading facts; and e) Fusion has suffered injury as a result. In further specificity:

 a. Debtor induced and intended for Fusion to purchase KM and execute the Purchase Agreement and Employment Agreement by promising not to directly compete with the business of KM and Fusion and to protect trade secrets and other protected information of KM and Fusion;

 b. Debtor misrepresented that he would not disclose proprietary information of or compete against Fusion and KM;

 c. Debtor knew his representations and statements to be false and were made with the intent to defraud Fusion and KM;

 d. Relying on Debtor's representations, Fusion entered into the Purchase Agreement and Employment Agreement and paid Debtor $4,350,000;

 e. Debtor had formed PPC while negotiating the Purchase and Employment Agreements with Plaintiffs and intentionally failed to disclose his acts;

 f. Debtor and his now ex-wife had complete control over the financial matters, operation and business activities of PPC and, through PPC, solicited business in direct competition with Plaintiffs and diverted business from KM to PPC, while actively concealing Debtor's ownership, management and control of PPC;

 g. Debtor also had managerial and financial control over BOP and through BOP solicited business in direct competition with Plaintiffs, while actively concealing Debtor's ownership, management and control of BOP;

    h.  Debtor actively concealed from Plaintiffs his ownership, financial interest and management of PPC and BOP by using the names of other persons, namely, Michael Hughes and Chad LaMartiniere, to falsely represent to Plaintiffs that PPC and BOP were not associated with Debtor, as Debtor knew that having any financial or management role in companies competing with Plaintiffs would be violations of the covenants of the Purchase and Employment Agreements;

    i.  Debtor redirected business from Fusion and KM to his competing business interests;

    j.  Debtor has actively concealed, transferred and sold assets obtained as part of his fraud against Fusion and KM;

    k.  As a result, KM has incurred damages, including, but not limited to, attorney fees and other costs.

  32.  Debtor used his ownership interest in BOP and PPC to directly compete with the business of Fusion and KM and while he was still employed by KM in a managerial capacity, thereby breaching fiduciary duties of loyalty and against self-dealing, owed the Plaintiffs by the express terms of his contracts and by common law.

  33.  Debtor's acts of diversion of business, interference with contracts of Plaintiffs and wrongful competition in violation of express covenants and duties constituted intentional harm to Plaintiffs, to wit, causing substantial loss of profits that K&M would have earned but for Debtor's willful acts, and causing Fusion to suffer substantial loss to the value of its ownership interest in K&M.

34. Debtor's actions in intentionally diverting from and competing for business against Plaintiffs violated fiduciary duties owed by him to the Plaintiffs, especially due to the managerial nature of Debtor's continuing employment at KM, by which he had access to and made wrongful competitive use of confidential and proprietary business information of Plaintiffs while pursuing his scheme of competing directly against his employer despite promising not to in exchange for receipt of over $4 million in consideration under the Purchase Agreement.

WHEREFORE, Plaintiffs Fusion and KM ask the Court to enter judgment in their favor as follows:

1. Excepting the Debt owed by Debtor to Fusion and KM from Debtor's discharge;

2. Lifting the automatic stay as to the Debtor and permitting Fusion and KM to continue their collection efforts against Debtor's proxies, transferees and alter egos in the Oklahoma County District Court;

3. Awarding Fusion and KM reasonable attorney's fees and costs associated with this action; and

4. Awarding Fusion and KM all additional relief, both at law and in equity, to which they are is entitled.

Dated the 18th day of November 2024.

RUBENSTEIN & PITTS, PLLC

<u>*/s/ Terry Stokes*</u>
Terry Stokes, OBA #11177
Leif Swedlow, OBA #17710
Alex Sharp, OBA #31876
1503 E. 19th Street
Edmond, Oklahoma 73013
Telephone:   (405) 340-1900
Facsimile:   (405) 340-1001
tstokes@oklawpartners.com
lswedlow@oklawpartners.com
asharp@oklawpartners.com
*Attorneys for Fusion Industries, LLC and K&M Highline Services, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 18, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Amanda R. Blackwood
amanda@blackwoodlawfirm.com
*Attorney for Debtor*

Gary D. Hammond
gary@okattty.com
*Attorney for Debtor*

Douglas N. Gould
dg@dgouldlaw.net
*Bankruptcy Trustee*

Kay Sewell
Kay.sewell@usdoj.gov
*Attorney for Internal Revenue Service*

                                              */s/ Terry Stokes*
                                              Terry Stokes