**Dated: March 21, 2025**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                          )
                                                )
MICHAEL RAY FRIDAY,                             )
                                                )        Case No. 24-12364-JDL
                                                )        Ch. 7
                        Debtor.                 )
                                                )
FUSION INDUSTRIES, LLC and                      )
K&M HIGHLINE SERVICES, LLC,                     )
                                                )
                        Plaintiffs,             )
                v.                              )        Adv. No. 24-1076-JDL
                                                )
MICHAEL RAY FRIDAY,                             )
                                                )
                                                )
                        Defendant.              )

## ORDER DENYING IN PART AND GRANTING
## IN PART MOTION TO DISMISS

### I. Introduction

This is an adversary proceeding seeking to have determined non-dischargeable a

$58,980,460.20[1] state court judgment predicated upon Debtor's alleged fraud arising out of his breach of a non-competition agreement made part of the sale of his business to Plaintiffs for the price of $4.3 million.  Debtor has moved under Fed.R.Civ.P. 9 and 12(b)(6), applicable to bankruptcy proceedings under Fed.R.Bankr.P. 7009 and 7012,[2] to dismiss Plaintiffs' complaint on the basis that they have not set forth facts in the complaint, sufficient to state a claim for relief under 11 U.S.C. § 523(a)(2)[3] (debt obtained by misrepresentations, false pretenses or actual fraud) or § 523(a)(4) (debt incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny).[4]  Debtor contends that the Plaintiffs' fraud claim is implausible under Rule 12(b) and fails to satisfy the heightened pleading standard of Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Before the Court for consideration are (1) *Defendant's Motion to Dismiss Plaintiff's* (sic) *Complaint* ("Motion") [Doc. 5] and (2) Plaintiffs' *Response to Motion to Dismiss*

---

[1] This is the combined amount of actual damages in the amount $29,490,230.10 and punitive damages in an equal amount for which the state court found Debtor liable. [*Order and Judgment* entered on January 4, 2024, in the case styled *Fusion Industries, LLC and K&M Highline Service, LLC, Plaintiffs v. Michael Friday et al., Defendants,* Case No. CJ-2019-657 in the District Court of Oklahoma County, State of Oklahoma].

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

[3] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[4] Plaintiffs have also alleged that their claims are predicated upon § 523(a)(6) (debt incurred by willful and malicious injury to person or property) and § 523(a)(19)(A)(ii) (debts incurred by common law fraud, deceit, or manipulation in connection with the purchase of any security). The Debtor's motion to dismiss does not challenge the viability of such claims. Whatever the merit of the applicability of those two subsections of § 523(a) to the claims set forth in the complaint, the Court need not address at this stage of the case.

("Response") [Doc. 7].  In support of the Court's ruling denying in part and granting in part the Debtor's Motion are the following Findings of Fact and Conclusions of Law.[5]

## II. Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and 157 (a) as a matter arising under Title 11 and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule 81.4(a).  This matter seeking a determination of an objection to discharge of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which this Court has authority to enter a final order.  Venue is proper pursuant to 28 U.S.C. § 1409.

## III. The Standards for a Motion to Dismiss

A motion to dismiss for "failure to state a claim upon which relief can be granted" is governed by Rule 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012.  The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).

The Court must construe a complaint in the light most favorable to the plaintiff, taken as true all factual allegations and making all reasonable inferences in the plaintiffs favor that can be drawn from the pleadings.  *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).  "That the Court accepts them as true, however, does not mean the allegations in a complaint are in fact true; a

---

[5] Pursuant to Fed.R.Civ.P. 52(a)(3), applicable to bankruptcy proceedings by Bankruptcy Rule 7052, the Court is not required to state findings of fact or conclusions of law when ruling on a motion under Rule 12.  It is, however, this Court's general practice to include such findings and conclusions.

plaintiff is not required to prove his case at the pleading stage." *Higginbottom v. Mid-Del School District,* 2016 WL 951691, at *2 (W.D. Okla. 2016). The Court must not "weigh potential evidence that the parties might present at trial ..." in order to test the sufficiency of the complaint. *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). It is well recognized that "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleadings but also to protect the interests of justice." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In *Twombly*, the Supreme Court ruled that a complaint "does not need detailed factual allegations ...," but must contain "enough facts to state a claim to relief that is *plausible* on its face." *Id.*; *See also*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Cook v. Baca,* 512 Fed.Appx. 810, 821 (10th Cir. 2013)**;** *Lamar v. Boyd,* 508 Fed.Appx. 711, 713-14 (10th Cir. 2013); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims") (emphasis in original).

In taking into account whether a plaintiff has stated a plausible claim, the court

4

considers the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013).  Further, the court considers the rules of pleading set forth in Rule 8 and, as applicable, Rule 9.

Since a motion to dismiss is judged on the well-pled allegations of a complaint being accepted as true, the substantive allegations of Plaintiffs' complaint, [Doc. 1], need be examined, and the Court must determine whether the complaint alleges sufficient facts supporting all the elements necessary to establish an entitlement to relief under the claims raised. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

### IV. The Allegations of the Complaint[6]

11. On or about February 24, 2016, Plaintiff Fusion [Industries, LLC] ("Fusion") and Debtor entered into a Membership Interest Purchase Agreement ("Purchase Agreement") whereby Fusion paid Debtor $4,350,000 for all the issued and outstanding membership units in K&M [Highline Services, LLC] ("KM").

12. The Purchase Agreement contains covenants by Debtor in favor of Fusion and KM, such as confidentiality, non-solicitation, non-competition and non–disparagement, among others.

13. Specifically, as part of the Purchase Agreement, Debtor agreed as follows:

---

[6] The numerical paragraphs set forth below are not consecutively numbered but correspond to the numerical paragraphs of the complaint. The Court believes that this numerical scheme permits the reader to more easily locate the language in the complaint itself. The Court has not included numerical paragraphs which it deems not necessary to determining whether a claim for relief is stated under Rules 9(b) and 12(b).

## SECTION 7
## NON-COMPETITION AND NON-SOLICITATION

      7.1    Non–Competition.    During the term of Seller's employment with the Company and for a period of five (5) years thereafter, Seller shall not, directly or indirectly (through a member or members of his immediate family or otherwise), individually or in partnership or in conjunction with any other person or entity:

      (a)    be engaged or participate in the Business or any business or services related thereto, in any manner, within the counties where the Business of the Company was being conducted as of the date of termination of Seller's employment with the Company, or any counties contiguous thereto; or

      (b)    own, operate, acquire, develop, manage, or take any action that results or may reasonably be expected to result in owning, operating, acquiring, developing, or managing any business which conducts the Business or any business or services related thereto, in whole or in part.

14. Also, as part of the transaction, Debtor became a post-transfer employee of KM pursuant to a written Employment Agreement ("Employment Agreement").

15. The Employment Agreement contains covenants of [Debtor] in favor of KM, such as loyalty, non-solicitation, non-competition and non-disparagement.

16. Specifically, as part of Debtor's Employment Agreement, Debtor agreed as follows:

      1.2.    During the Employment term, Employee shall devote substantially all of his business time (excluding periods of vacation and other approved leaves) to the performance of his duties with the Company; provided the foregoing shall not prevent Employee from (i) participating in charitable, civic, educational, professional, community, industry, or other affairs or, with prior written approval of the Principal (such approval not to be unreasonably withheld); and (ii) managing his and his family's personal investments so long as such activities do not materially and interfere with the performance of his duties hereunder or create a potential business conflict or the appearance thereof as determined by the Company.

6

6.1   <u>Confidentiality</u>

    a)      Employee shall not, directly or indirectly, use or disclose any of the Company's confidential proprietary business information known or gained by Employee as a consequence of his association and employment with the Company, which is not generally known in the industry including, but not limited to, information about the Company's customers, clients, vendors, pricing, processes, products, services, business practices, testing, industry know-how, and computer facilities and programs.

6.2   <u>Non-solicitation.</u>  During the term of Employee's employment with the Company and for a period of five (5) years thereafter, and the purchase agreement is fulfilled, Employee shall not, directly or indirectly, individually or in partnership or in conjunction with any other person or entity:

    a)      contact, solicit, induce, attempt to induce, or make request of any person or entity engaged in any capacity with the Company whether as an established customer, client, contractor, business contact, or employee, for the purpose or with the effect of that person or entity terminating his, her or its engagement, relationship or employment with the Company; or

    b)      contact, solicit, induce, attempt to induce, or request any established customer, client, contractor, business contact or employee of the Company to transfer such person or entity's business or relationship with the Company to any other person, firm, partnership, corporation, or other entity.

6.3   <u>Non–competition.</u>

During the term of this Agreement, and for a period of five (5) years following the termination of this Agreement for any reason, it Employee shall not, directly or indirectly (to a member or spouse), individually or in partnership or conjunction with any other person or entity:

    a)      be engaged or participate in the Business or any business or services related thereto, in any manner, within the counties where the Business of the Company was being conducted as of the date of the

termination of Employee's employment with the Company, or any counties contiguous thereto; or

b)  own, operate, acquire, develop, manage, or take any action that results or may reasonably be expected to result in owning, operating, acquiring, developing, or managing any business which conducts the Business or any business or services related thereto, in whole or in part.

17. After Fusion purchased KM, it was discovered that Debtor owned a company named Black Out Power, LLC ("BOP"), a direct competitor of Fusion, and had used BOP to subvert, undermine and directly compete with the business of KM and Fusion.

18. After Fusion purchased KM, it was also discovered that Debtor owned an interest in the Premier Powerline Construction, LLC ("PPC") which was also a direct competitor of Fusion and KM.

19. Debtor purposefully and actively concealed his ownership interests in BOP and PPC, and the clandestine acts of those entities, from those managing the business of Fusion and KM.

20. Debtor's involvement with BOP and PPC constituted direct violations of his promises within the Purchase Agreement and the Employment Agreement.

21. Debtor knowingly and intentionally induced Fusion to enter into the Purchase Agreement and Employment Agreement to perpetrate his fraudulent scheme by gaining insight as to the trade secrets and other protected information of Fusion and KM, and to use the same for his personal and competing interests.

22. Debtor fraudulently misrepresented to Fusion that he would not act in such a way to harm the business or other interests of Fusion or KM.

23. When Debtor represented to Fusion that he would not disclose proprietary

information of, or compete against Fusion and KM, Debtor knew his representations and statements to be false, and those representations were made by him with an intent to defraud and deceive Fusion and KM, and those who manage their business.

24. Fusion and KM filed an action in *Fusion Industries, LLC et. al. v. Michael Friday, et. al*, Oklahoma County District Court Case No. CJ-2019-657, in pursuit of their claims against Debtor.

28. Judgment was entered against Debtor in the above-identified state court litigation in the principal amount of $58,980,460.20, plus interest.

30. The debt to Fusion and KM should not be discharged because, as conclusively determined by the Court issuing the Judgment, Debtor fraudulently induced Fusion and KM to enter into the Purchase Agreement and Employment Agreement by false pretenses, a false representation, or actual fraud, with malice.  As such, Plaintiffs' claims against Debtor are not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

31. Specifically, Debtor fraudulently induced Fusion into purchasing KM, to wit: a) Debtor's material representations that he would not engage in competition, directly or indirectly, with Plaintiffs, while materially concealing the fact that it already formed an entity with the specific intention of using his continuing managerial role at KM to divert business away from KM to PPC and BOP and to solicit business in direct competition with Plaintiffs; b) debtor's representations were false and the undisclosed facts were material to the transaction between Plaintiffs and Debtor; c) Debtor knew or recklessly disregarded that his representations were false and knew or recklessly disregarded that creating a competing business would be material fact that, if known, would cause Plaintiffs to not enter into the subject contracts; d) Debtor made the misrepresentations and omitted

9

disclosure of material facts with the intention that Fusion act upon false and misleading facts; and e) Fusion has suffered injury as a result.  In further specificity:

a.    Debtor induced and intended for Fusion to purchase KM and execute the Purchase Agreement and Employment Agreement by promising not to directly compete with the business of KM and Fusion and to protect trade secrets and other protected information of KM and Fusion;

b.    Debtor misrepresented that he would not disclose proprietary information or compete against Fusion and KM;

c.    Debtor knew his representations and statements to be false and were made with the intent to defraud Fusion and KM;

d.    Relying on Debtor's representations, Fusion entered into the Purchase Agreement and Employment Agreement and paid Debtor $4,350,000;

e.    Debtor had formed PPC while negotiating the Purchase and Employment Agreements with Plaintiffs and intentionally failed to disclose his acts;

f.    Debtor and his now ex-wife had complete control over the financial matters, operation and business activities of PPC and, through PPC, solicited business in direct competition with Plaintiffs and diverted business from KM to PPC, while actively concealing Debtor's ownership, management and control of PPC;

g.    Debtor also had managerial and financial control over BOP and through BOP solicited business in direct competition with Plaintiffs, while actively concealing Debtor's ownership, management and control of BOP;

h.    Debtor actively concealed from Plaintiffs his ownership, financial interest and management of PPC and BOP by using the names of other persons, namely,

10

Michael Hughes and Chad LaMartiniere, to falsely represent to Plaintiffs that PPC and BOP were not associated with Debtor, as Debtor knew that having any financial management role in companies competing with Plaintiffs would be violations of the covenants of the Purchase and Employment Agreements;

       i.     Debtor redirected business from Fusion and KM to his competing business interests;

       j.     Debtor has actively concealed, transferred and sold assets obtained as part of his fraud against Fusion and KM;

       k.     As a result, KM has incurred damages, including, but not limited to, attorney fees and other costs.

32. Debtor used his ownership interest in BOP and PPC to directly compete with the business of Fusion and KM while he was still employed by KM in a managerial capacity, thereby breaching fiduciary duties of loyalty and against self-dealing, owed the Plaintiffs by the express terms of his contracts and by common law.

33. Debtor's acts of diversion of business, interference with contracts of Plaintiffs and wrongful competition in violation of express covenants and duties constituted intentional harm to Plaintiffs, to wit, causing substantial loss of profits that K&M would have earned but for Debtor's willful acts, and causing Fusion to suffer substantial loss to the value of its ownership interests in K&M.

34. Debtor's actions in intentionally diverting from and competing for business against Plaintiffs violated fiduciary duties owed by him to the Plaintiffs, especially due to the managerial nature of Debtor's continuing employment at KM, by which he had access to and made wrongful competitive use of confidential and proprietary business information

of Plaintiffs while pursuing his scheme of competing directly against his employer despite promising not to in exchange for receipt of over $4 million in consideration under the Purchase Agreement.

## V. Discussion

### A. Particularity Requirements of Rule 9(b).

Debtor argues that Plaintiffs' claims do not meet the particularity requirements of alleging fraud under Rule 9(b), so that dismissal should be granted under that Rule and the broader scope under Rule 12(b)(6) for failure to state a claim.

Dismissal of a claim for failure to meet the particularity requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Seattle-First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) The primary purpose of Rule 9(b) is to afford a defendant fair notice of the plaintiffs' claim and of the factual ground upon which it is based. *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992) (overruled on other grounds). "Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing ... and it serves to inhibit the institution of strike suits...." *Id.*[7] "[A] complaint alleging fraud [must] 'set forth the time, place and

---

[7] A strike suit is a lawsuit "often based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement." Strike Suit, *Black's Law Dictionary* (12th ed. 2024). The U.S. Supreme Court has characterized strike suits as claims "by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

contents of the false representation, the identity of the party making the false statements, and the consequences of the fraud.'" *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

"The particularity requirement of Rule 9(b) should be read in conjunction with Rule 8(a)'s 'short and plain statement' pleading requirement." *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 172 (Bankr. N.D. Ill.1997). "Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have been set forth adequately." *Id.* (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). "[T]he who, what, when, and where aspects of the fraud need not be related with exact details in the complaint as a journalist would hope to relate them to general public. That is, it is only necessary to set forth a basic outline of fraud in order to alert the defendant of the purported fraud he is defending against." *New Century Bank v. Carmell (In re Carmell),* 424 B.R. 401, 412 (Bankr. N.D. Ill. 2010) (citations omitted).

Here, Plaintiffs have stated (1) when the misrepresentations occurred (in conjunction with the time the parties entered into the Purchase and Employment Agreements on February 24, 2016), (2) the contents of the false representation (the Debtor's representations that he would not engage in competition, directly or indirectly, with Plaintiffs, while concealing the fact that he already had formed an entity with the specific intention of using his continuing managerial role at KM to divert business away from KM to PPC and BOP when, in fact, Debtor already owned an interest in PPC and BOP which were in direct competition with KM), (3) the identity of the of the party making the false statements (the Debtor), and (4) the consequences of the fraud (an actual economic loss

determined by the State Court Judgment to be approximately $28 million).

When considering a motion to dismiss the Court can consider documents and exhibits that are central to the complaint and are referred to in it, as well as information that is properly subject to judicial notice.[8]  As if the Debtor needed any more detail of the wrongful conduct with which he is accused, he need only read the *Order and Judgment* from the State Court Litigation which is attached as Exhibit 1 to the Plaintiffs' Response [Doc. 7-1].  The *Order and Judgment* found, among other things, "that fraud has been shown by clear and convincing evidence to have been committed by Defendant Friday, including by and through his formation, ownership and control of Premier Powerline Construction, LLC, intentionally and with malice towards Plaintiffs."

The Court finds that for Rule 9(b) purposes, the Plaintiffs' complaint affords fair notice of the factual ground upon which it is based, and that it sets forth the time, place and contents of the false representation, as well as the identity of the party or parties making the alleged false statements, and the consequences of the alleged fraud.  It cannot be seriously contended that the Debtor does not know the wrongful acts with which he is being accused.  Accordingly, Debtor's *Motion to Dismiss Plaintiff's* (sic) *Complaint* based on Rule 9(b) is denied.

---

[8] The Court is entitled to take judicial notice of both its own docket sheets and the state court docket sheets. *United States v. Ahidley*, 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); In re *Agrawal,* 560 B.R. 566 (Bankr. W.D. Okla. 2016); *In re Copeland,* 2018 WL 6583991 (Bankr.W.D. Okla. 2018); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts).

**B. Allegations of Fraud Is Sufficient to Withstand Dismissal Under Rule 12(b).**

Paragraph 8 of the Plaintiffs' complaint states that "the statutory predicates for the relief requested herein are found in 11 U.S.C. § 1328(c)(2) as well as 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6) and (a)(19)(A)(ii)..."  Section 523(a)(2) has two subsections: (a)(2)(A) excepting from discharge debts incurred by..."false pretenses, a false representations, or actual fraud" and (a)(2)(B) excepting from discharge any debt obtained by "...use of a statement in writing, that is materially false, respecting the debtor's or an insider's financial condition, on which the creditor... reasonably relied...."  The Debtor contends that the Plaintiffs failure to identify the specific subsections within § 523(a)(2) leaves unclear the specific claims a defendant is expected to answer."  In this Court's opinion, there is no lack of clarity as to which subsection the allegations fall.

It is clear from the allegations of the complaint that the Plaintiffs are basing their claim for fraud under subsection (a)(2)(A), not upon the Debtor giving them a false written financial statement under (a)(2)(B).  No facts are alleged regarding a written financial statement.  "Subsections 523(a)(2)(A) and (B) are mutually exclusive" as subsection (B) is clearly applicable only to written statements respecting a debtor's or insider's financial condition while subsection (A) excludes statements respecting a debtor's or insider's financial condition. *In re Lauer,* 371 F.3d 406, 413 (8th Cir.2004) (citing *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 608 (8th Cir.1997)); *Fairfax State Sav. Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 883 (Bankr. N.D. Iowa 2002) (noting that "[c]ase law has consistently and unanimously held that paragraphs (A) and (B) of § 523(a)(2) are mutually exclusive").

15

Under the liberal pleading requirements "under Rule 8(a)(2) it is not necessary that the plaintiff set forth the legal theory on which he relies if he sets forth sufficient factual allegations to state a claim showing that he is entitled to any relief which the court may grant." *In re Pantazelos*, 543 B.R. 864, 877 (Bankr. N.D. Ill. 2016) (quoting *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978). "Additionally, '[t]he complaint need not specify the correct legal theory nor point to the right statute to survive a Rule 12(b) motion to dismiss.'" *Id.* (quoting *Whitehead v. AM International* 860 F.Supp. 1280, 1286 (N.D. Ill. 1994)). While a plaintiff may plead facts that show it has no claim, it cannot plead itself out of court by citing to the wrong legal theory or failing to cite any theory at all. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134 (7th Cir. 1992); *B. Sanfield Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 973 (7th Cir. 1999). It is therefore of no moment that Plaintiffs' complaint fails to cite which subsection of § 523(a)(2) is the basis for their claim as long as their allegations gave notice of a legally sufficient claim. Given the extremely detailed allegations of the complaint, it should be clear to the Debtor and counsel that the Plaintiffs were proceeding under subsection (a)(2)(A).

The question therefore becomes whether the Plaintiff has alleged *facts* sufficient to state a claim for fraud under § 523(a)(2)(A) which renders non-dischargeable any debt obtained by "false pretenses, a false representation, or actual fraud ...." Plaintiffs' complaint alleges that the "Debtor fraudulently induced Fusion and KM to enter into the Purchase Agreement and Employment Agreement by false pretenses, a false representation, or actual fraud, with malice," citing § 523(a)(2). [Doc. 1, ¶ 30].

**1. False Pretenses**. "False pretenses under Section 523(a)(2)(A) are implied

16

misrepresentations intended to create and foster a false impression" and "'can be defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor.'" *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) (quoting *Stevens v. Antonious (In re Antonious),* 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)). "Intent to deceive can be inferred from the totality of the circumstances." *Id.* at 222 (citing *Copper v. Lemke (In re Lemke),* 423 B.R. 917, 922 (10th Cir. BAP 2010)); *In re Woods,* 660 B.R. 905, 920, n.45 (10th Cir. BAP 2024); *In re Osborne*, 520 B.R. 861, 869 (Bankr. D. N.M. 2014).

False pretenses include conduct and material omissions. *See Marks v. Hentges (In re Hentges),* 373 B.R. 709, 725 (Bankr. N.D. Okla. 2007) (false pretenses are "implied misrepresentations or conduct intended to create and foster a false impression.") (internal quotations omitted); *In re Woods,* 616 B.R. 803, 812-13 (Bankr. N.D. Okla. 2020). A false pretenses claim presents the issue of "whether, by silence, insinuation, or inference, [the] Debtor knowingly acted in such a fashion as to create a false impression in the mind of [the creditor]" about the transaction at issue. *Woods,* 616 B.R. at 813.

The elements of a non-dischargeability proceeding based on false pretenses are:

(1) The debtor made a false representation [*or omission*];

(2) The debtor made the representation [or omission] with the intent to deceive the creditor;

(3) The creditor relied on the representation [or omission];

(4) The creditor's reliance was justifiable; and

(5) The debtor's representation [or omission] caused the creditor to sustain a loss. *Woods*, 660 B.R. at 918 (citing *In re Young*, 91 F.3d 1367, 1373 (10ᵗʰ Cir. 1996)); See also *In re Osborne*, 520 B.R. 861, 868 (Bankr. D. N.M. 2014).

    **2. False Representation.** "False representations are representations knowingly and fraudulently made that give rise to the debt." *Osborne,* 520 B.R. at 868, (quoting *In re Sutherland–Minor,* 345 B.R. 348, 354 (Bankr. D. Colo. 2006); See also *In re Lewis*, 271 B.R. 877, 885 (10ᵗʰ Cir. BAP 2002). The elements of a non-dischargeability action based on false representation are the same as for false pretenses. *Woods*, 660 B.R. at 918; *Young,* 91 F.3d at 1373.

    **3. Actual Fraud.** The term "actual fraud" in § 523(a)(2)(A) "connotes deception or trickery" that involves "moral turpitude or intentional wrong." *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 355, 360, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016). It can be proven by showing "a scheme to deprive or cheat [the creditor] of property or a legal right...." *In re Vickery*, 488 B.R. 680, 690 (10ᵗʰ Cir. BAP 2013); See also 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed.) (actual fraud is "a deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."). Similarly, in *Husky* the Supreme Court stated that "actual fraud" is difficult to define precisely but "connotes deception or trickery" that is "done with wrongful intent." *Husky,* 578 U.S. at 360.

    Plaintiffs allege that the "Debtor fraudulently induced Fusion into purchasing KM... [by] material representations that he would not engage in competition, directly or indirectly,

18

with Plaintiffs while materially concealing the fact that he had already formed an entity with the specific intention of using his continuing managerial role at KM to divert business away from KM to PPC and BOP... [Doc. 1, ¶ 31].  Such allegations state a claim for actual fraud.

      **4. Material omissions can also be false representations.** When a debtor has an affirmative duty to disclose information, the failure to convey the information may be considered a false representation for purposes of Section 523(a)(2). *Fowler,* 91 F.3d at 1374.  Moreover, "false pretense[s] as used in § 523(a)(2)(A) includes material omissions, and means 'implied misrepresentations or conduct intended to create and foster a false impression.'" *William W. Barney, M.D. P.C. Retirement Fund v. Perkins (In re Perkins),* 298 B.R. 778, 788 (Bankr. D. Utah 2003). "An overt misrepresentation is not required, because 'omissions or a failure to disclose on the part of the debtor can constitute misrepresentations for the purpose of nondischargeability where the circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor.'" *Id.* (citations omitted).

      The common test for omissions or non-disclosure in the non-dischargeability context is the common law of torts as set forth in the *Restatement (Second) of Torts* (1976). *Field v. Mans*, 516 U.S. 59, 70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The applicable portion of § 551 states:

> § 551 Liability for Nondisclosure
>
> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the

19

matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> ....
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

The Plaintiffs' fraud claim is also based upon the assertion that Debtor failed to disclose the fact that at the time he entered into the Agreements with Plaintiffs he was already in violation of the non-competition and non-solicitation provisions of the Agreements by owning entities in competition with Plaintiffs and soliciting Plaintiffs' customers. Plaintiffs' complaint alleges facts sufficient to state a claim for fraud under § 523(a)(2)(A) as defined in the *Restatement*.

### C. The Complaint Does Not State a Claim Under § 523(a)(4).

Plaintiffs' *Complaint* cites § 523(a)(4) as one of the grounds upon which it seeks recovery. Pursuant to § 523(a)(4), a debtor's discharge does not apply to debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To establish that a claim is non-dischargeable under § 523(a)(4), the creditor must prove one of three things: 1) fraud or defalcation while acting in a fiduciary capacity, 2) embezzlement, or 3) larceny. Each will be addressed.

**1. Breach of Fiduciary Duty.** To state a claim under § 523(a)(4) for fraud

20

while acting in a fiduciary capacity, a plaintiff must allege that: (1) a fiduciary relationship existed between the debtor and the creditor, and (2) the debt owed to the creditor is attributable to a fraud or defalcation committed by the debtor in the course of the fiduciary relationship. *Fowler v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996).

Federal law determines the existence of a fiduciary relationship for purposes of Section 523(a)(4); "however, state law is relevant to the inquiry." *Fowler,* 91 F.3d at 1371. This exception to discharge is a narrow one, and in the Tenth Circuit, an express or technical trust is required for a fiduciary relationship, and neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties, will give rise to a claim under § 523(a)(4). *Id.* at 1371-72; *Allen v. Romero (In re Romero),* 535 F.2d 618, 621 (10th Cir. 1976); *Kayes v. Klippel (In re Klippel),* 183 B.R. 252, 259 (Bankr. D. Kan. 1995) ("In this circuit, 11 U.S.C. § 523(a)(4) applies only to a fiduciary relationship arising from a technical or express trust...."). Additionally, the trust creating the fiduciary capacity must have been expressly established or imposed prior to the alleged tortious action that created the debt. *Fowler* at 1372.

While citing the statute, Plaintiffs' complaint does not allege or refer to any trust, either express or statutory; accordingly, there is no fiduciary duty and consequently no fraud or defalcation acting in that capacity. The complaint fails to state a claim for breach of fiduciary duty under § 523(a)(4).

**2. Embezzlement.** Section 523(a)(4) also provides that a debtor is not discharged from debt occurring from "embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Non-dischargeability under § 523(a)(4) may rest on proof of embezzlement or larceny without

21

requiring proof of a fiduciary relationship. *See Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988). Both claims have similar elements. The main difference between larceny and embezzlement is that with embezzlement, the debtor initially acquires the property lawfully, whereas larceny requires that the funds originally come into the debtor's hands unlawfully. *Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 876 (Bankr. D. Colo. 2004); *In re Padilla*, 493 B.R. 248, 252 (Bankr. D. Colo. 2013); *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 789 (Bankr. D. Colo.2002). To establish the embezzlement exception to discharge, the creditor must prove: 1) the debtor unlawfully came into possession of the creditor's property or funds, 2) that the debtor appropriated the funds for his or her own benefit, and 3) that he or she did so with fraudulent intent or deceit. *Baker v. Baker (In re Baker)*, 2008 WL 753738 (Bankr. D. N.M. 2008).

Nowhere does the Plaintiffs' complaint allege that the Debtor came into any property belonging to Plaintiff, that he appropriated for his own benefit, or that he had fraudulent intent. It is alleged that the Debtor had income from sources that he was contractually not entitled to, but those funds were never in the possession of or the property of the Plaintiffs. The complaint fails to state a claim for relief or embezzlement under § 523(a)(4).

**3. Larceny.** To establish the larceny exception to discharge, the creditor must prove: 1) that the debtor fraudulently and wrongfully took and carried away the property of the creditor, 2) that the debtor intended to convert the property to his or her own use, and 3) that he did so without the consent of the owner. *Bryant v. Lynch (In re Lynch),* 315 B.R. 173, 179 (Bankr. D. Colo. 2004)(citations omitted). While the Plaintiffs' complaint does infer that the Debtor's earnings received in violation of the conditions and covenants of the

agreements were "ill-gotten gains," the complaint does not  allege that the Debtor took and carried away the property of the Plaintiffs.  The complaint fails to state a claim for relief or larceny under § 523(a)(4).

For the reasons stated above,

**IT IS ORDERED** that *Defendant's Motion to Dismiss Plaintiff's* (sic) *Complaint* [Doc. 5]  is **Granted in Part and Denied in Part** as follows:

*Defendant's Motion to Dismiss Plaintiff's* (sic) *Complaint* is **Denied** as to Plaintiffs' claims under § 523(a)(2)(A);

*Defendant's Motion to Dismiss Plaintiff's* (sic) *Complaint*  is **Granted** as to Plaintiffs' claims asserted under §§ 523(a)(2)(B) and 523(a)(4).

In accordance with Fed.R.Bankr.P. 7012(a) the Plaintiffs have **14 days from the date of this Order** within which to file an amended complaint should they so choose.  If Plaintiffs do not file an amended complaint, Defendant/Debtor shall file a responsive pleading within 20 days following the expiration of the 14 days granted to the Plaintiffs to file an amended complaint as set forth herein.

#   #   #